**MANNING CURTIS BRADSHAW**
**& BEDNAR PLLC**
Alan C. Bradshaw, #4801
abradshaw@mc2b.com
Christopher M. Glauser, #12101
cglauser@mc2b.com
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
Telephone: (801) 363-5678
Facsimile: (801) 364-5678

*Attorneys for Plaintiff/Counterclaim Defendant Garden of Life, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GARDEN OF LIFE, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>RHEMA HEALTH PRODUCTS INC.,<br><br>        Defendant. | **GARDEN OF LIFE, LLC'S ANSWER AND DEFENSES TO RHEMA HEALTH PRODUCT INC.'S THIRD AMENDED ANSWER AND COUNTERCLAIM.** |
| RHEMA HEALTH PRODUCTS INC.,<br><br>        Third-Party Plaintiff,<br><br>v.<br><br>TRI-ISO TRYLINE, LLC dba BAOBAB FOODS,<br><br>        Third-Party Defendant. | Case No. 2:16-cv-01222-BSJ |

Plaintiff Garden of Life, LLC ("GOL") hereby answers the Counterclaim of Defendant

Rhema Health Product Inc.'s ("Rhema") Third Amended Answer and Counterclaim as follows:

## COUNTERCLAIM

1.      GOL admits that Rhema is a Washington corporation but lacks knowledge or information sufficient to form a belief as to the location of Rhema's principle place of business.

2.      The allegations of Paragraph 2 merely purport to introduce allegations Rhema asserts and therefore require no response.  To the extent a response is required, GOL denies that it breached any obligations or incurred any liability to Rhema.

3.      Admitted.

4.      The allegations of Paragraph 4 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL does not contest the jurisdiction of this Court.

5.      Admitted.

6.      GOL states that the allegations of Paragraph 6 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the Manufacturing Agreement between Rhema and GOL includes the language quoted in Paragraph 6.

7.      GOL states that the allegations of Paragraph 7 purport to construe a document that speaks for itself and therefore require no response.  To the extent that a response is required, GOL admits that the Manufacturing Agreement provides, in Section III(4): "RHEMA shall be responsible for securing and purchasing all raw materials from GOL designated and approved suppliers and vendors. RHEMA will purchase raw materials and components, provided that GOL fully assists with communication to raw material suppliers."

8.      GOL states that the allegations of Paragraph 8 purport to construe a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL

admits that the specifications for Raw Meal required the use of raw ingredients, including moringa oleifera, but denies any remaining allegations of Paragraph 8.

9. Denied.

10. Denied.

11. GOL states that the allegations of Paragraph 11 purport to selectively quote from a document that speaks for itself and therefore require no response. To the extent a response is required, GOL admits that the language quoted in Paragraph 11 appears in the Quality Agreement, except that the term "GOL" appears as "GoL".

12. GOL states that the allegations of Paragraph 12 purport to selectively quote from a document that speaks for itself and therefore require no response. To the extent a response is required, GOL admits that the language quoted in Paragraph 12 appears in the Quality Agreement, except that it states "GoL is also responsible for evaluating their formula and submitting any notification of New Dietary Ingredient (NDI) required to FDA."

13. GOL states that the allegations of Paragraph 13 purport to selectively quote from a document that speaks for itself and therefore require no response. To the extent a response is required, GOL admits that the language quoted in Paragraph 13 appears in the Quality Agreement, except that it states "Prior to any commercial manufacturing, GoL will provide RHEMA a final formula bill of material which lists formula ingredients and amounts along with final package configuration."

14. GOL states that the allegations of Paragraph 14 purport to selectively quote from a document that speaks for itself and therefore require no response. To the extent a response is required, GOL admits that the language quoted in Paragraph 14 appears in the Quality Agreement, except that the term "Rhema" appears as "RHEMA".

15.     GOL states that the allegations of Paragraph 15 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the language quoted in Paragraph 15 appears in the Quality Agreement, except that the term "GOL" appears as "GoL".

16.     GOL states that the allegations of Paragraph 16 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the language quoted in Paragraph 16 appears in the Quality Agreement, except that it appears at section 9.3.1, not 9.1, the term "Rhema" appears as "RHEMA," and Paragraph 16 does not contain a closed quotation mark.

17.     GOL states that the allegations of Paragraph 17 purport to characterize documents that speak for themselves and therefore require no response.  To the extent a response is required, GOL states that it lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in Paragraph 17 and therefore leaves Rhema to its proof.

18.     GOL states that the allegations of Paragraph 18 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the language quoted in Paragraph 18 appears in the Quality Agreement, except that the term "GOL" appears as "GoL".

19.     GOL states that the allegations of Paragraph 19 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the language quoted in Paragraph 19 appears in the Quality Agreement, except that it states "If additional testing is requested, GoL will modify its standard testing plan accordingly and include the modifications on the product's finished good specification. All additional testing costs will be at the expense of GoL."

20.     GOL states that the allegations of Paragraph 20 purport to construe a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that Exhibit A, the Quality and Compliance Agreement Checklist, is incorporated into the Quality Agreement.

21.     GOL states that the allegations of Paragraph 21 purport to construe a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the Checklist "defines who is responsible for the Good Manufacturing Practice (GMP) aspects of specification development, manufacturing, testing and release of GoL products," and notes that a party either had full, shared, or no responsibility for certain tasks, but denies the remaining allegations.

22.     GOL states that the allegations of Paragraph 22 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the language quoted in Paragraph 22 appears in Exhibit A to the Quality Agreement, except that the term "GOL" appears as "GoL".

23.     GOL states that the allegations of Paragraph 23 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the language quoted in Paragraph 23 appears in the Quality Agreement, except that the term "Rhema" appears as "RHEMA".

24.     GOL lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24 and therefore leaves Rhema to its proof.

25.     GOL states that the allegations in Paragraph 25 –  "Basic GOL microbial testing, including testing for pathogens (salmonella and E. coli), was conducted on all incoming raw

supplied by Baobab" – are incomprehensible as drafted and therefore require no response.   To the extent a response is required, GOL denies the allegations of Paragraph 25.

26.     Denied.

27.     Denied.

28.     GOL states that the allegations of Paragraph 28 purport to construe a statute that speaks for itself and to assert a legal conclusion, and therefore require no response.  To the extent a response is required, GOL denies that Paragraph 28 accurately characterizes or completely addresses the requirements under Section 204(d)(2) of the Food Safety Modernization Act.

29.     GOL states that the allegations of Paragraph 29 purport to construe a document that speaks for itself and to assert a legal conclusion, and therefore require no response.  To the extent a response is required, GOL denies that Paragraph 29 accurately or completely addresses the current draft guidelines.

30.     GOL lacks knowledge or information sufficient to form a belief as to the truth of allegations concerning what Rhema was "informed" by unidentified sources and therefore leaves Rhema to its proof.  GOL specifically denies the allegations of Paragraph 30 to the extent they purport to assert that raw Moringa Powder is a "high risk" ingredient and that it has a "high potential for being contaminated with microorganisms," or that "the absence of steps taken to reduce that likely contamination during the manufacturing process" makes Moringa Powder "high risk".

31.     Denied.

32.     Denied.

33.     Denied.

34.     GOL denies the allegations of Paragraph 34 to the extent they suggest that raw Moringa Powder has an unreasonable potential to result in contamination with microorganisms or that "treat[ment] with a kill-step" is the only way to prevent such contamination.  GOL states that, as used in Paragraph 34,  the term "microorganisms" is undefined, vague, and overbroad, and the phrase "treated with a kill-step," is undefined and vague.  As such, the allegations do not permit GOL to provide an additional response.

35.     Admitted.

36.     GOL states that the allegations of Paragraph 36 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL specifically denies the allegations that Moringa Powder is "a 'high risk' ingredient and otherwise ha[s] a high risk of contamination with microorganisms," GOL states that Rhema was obligated to provide GOL Raw Meal that satisfied certain specifications and was not contaminated, and GOL denies any remaining allegations of Paragraph 36.

37.     GOL states that the allegations of Paragraph 37 purport to construe a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL denies that Rhema has properly construed the language of Section 9.1 of the Quality Agreement.

38.     GOL states that it lacks knowledge or information sufficient to form a belief as to the truth of allegations concerning when GOL "informed" Rhema that Baobab was an approved supplier of Moringa Powder and therefore leaves Rhema to its proof, but GOL admits that it approved Baobab as a supplier and informed Rhema of that fact during its contractual relationship with Rhema.  GOL denies the remaining allegations of Paragraph 38 to the extent they purport to imply that Rhema had no involvement in the use of Baobab as a supplier of

Moringa Powder and further states that supplier approval was a shared responsibility of GOL and Rhema.

39.     The allegations of Paragraph 39 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 39.

40.     Denied.

41.     GOL states that, as used in Paragraph 41, the term "microorganisms" is undefined, vague, and overbroad, and therefore does not permit GOL to provide a response.  To the extent a response is required, GOL denies the allegations of Paragraph 41, except GOL admits that any food product carries a risk of containing *Salmonella*.

42.     GOL specifically denies the allegation that the "standard of care in the industry was to apply a kill step to raw Moringa Powder," and denies the remaining allegations of Paragraph 42.

43.     GOL states that the allegations of Paragraph 43 purport to construe a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the Raw Meal that Rhema manufactured for GOL was formulated to include Moringa Powder as an ingredient, but denies the remaining allegations of Paragraph 43 to the extent they intend to suggest that Rhema was forced into including contaminated Moringa Powder in Raw Meal.

44.     GOL states that the allegations of Paragraph 44 purport to characterize a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that GOL received a written communication from Baobab, which was addressed to Rhema, on or about April 16, 2015, but denies Rhema's characterization of that document.

45.     GOL states that the allegations of Paragraph 45 purport to characterize a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that GOL received a written communication from Baobab, which was addressed to Rhema, on or about April 16, 2015, but denies Rhema's characterization of that document.

46.     GOL states that the allegations of Paragraph 46 purport to characterize a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that both GOL and Rhema received a written communication from Baobab, which was addressed to Rhema, on or about April 16, 2015, but denies Rhema's characterization of that document.

47.     GOL states that the allegations of Paragraph 47 purport to characterize a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that both GOL and Rhema received a written communication from Baobab, which was addressed to Rhema, on or about April 16, 2015, but denies Rhema's characterization of that document.

48.     GOL states that the allegations of Paragraph 48 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is

required, GOL admits that GOL sent a written communication to Rhema on April 16, 2015, which included the language quoted in Paragraph 48.

49.     GOL states that the allegations of Paragraph 49 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the language quoted in Paragraph 49 appears in a communication GOL received from Rhema on or about April 16, 2015.

50.     GOL states that the allegations of Paragraph 50 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the language quoted in Paragraph 50 appears in a communication GOL sent to Rhema on or about April 17, 2015.

51.     GOL states that the reference to "levels of microorganisms," as used in this request, is vague and ambiguous, as it does not define "microorganisms" or identify any particular level of microorganisms, nor does it necessarily refer to pathogens which are at issue in this case, and therefore does not permit GOL to formulate a response to the allegations of Paragraph 51.  To the extent a response is required, GOL denies the allegations of Paragraph 51.

52.     Denied.

53.     GOL admits that it was informed that the total plate count levels in a sample of Baobab's Moringa Powder as of April 16, 2015 had ranged from 200,000 CFU/G to 800,000 CFU/G and found a total plate count of 1 million to be acceptable, but denies the allegations of Paragraph 53 to the extent they purport to claim that the total plate count levels in non-contaminated Moringa Powder were "high" or that Moringa Powder used in Raw Meal reached a level of 1 million TPC.

54.     GOL admits that total plate count is a count of the total microbial organisms in food ingredients or finished goods, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 54 and therefore leaves Rhema to its proof.

55.     GOL admits that total plate count is a count of the total microbial organisms in food ingredients or finished goods, but denies that total plate count is indicative of or relevant to pathogens such as salmonella, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 and therefore leaves Rhema to its proof.

56.     GOL states that the allegations of Paragraph 56 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the language quoted in Paragraph 56 appears in an email dated April 16, 2015 from GOL to Rhema, but denies Rhema's characterization of that email.

57.     Denied.

58.     Denied.

59.     The allegations of Paragraph 58 purport to construe a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that Baobab asked if it could "go to 1.3 million TPC" on lots of Moringa Powder and that Suzanne Cantwell of GOL indicated "1.3 million is ok,"  but denies the allegations of Paragraph 59 to the extent they purport to claim that Moringa Powder used in Raw Meal reached a level of 1.3 million TPC.

60.     Denied.

61.     GOL states that the allegations of Paragraph 61 purport to characterize a
document that speaks for itself and therefore require no response.  To the extent a response is
required, GOL denies the allegations of Paragraph 61.

62.     GOL admits that E. Coli bacteria often live in the intestines of humans and
animals, but otherwise lacks knowledge or information sufficient to form a belief as to the truth
of the allegations in Paragraph 62 and therefore leaves Rhema to its proof.

63.     Admitted.

64.     GOL admits that coliforms can be used as an indicator for hygiene in food and
dietary supplements, but otherwise lacks knowledge or information sufficient to form a belief as
to the truth of the allegations in Paragraph 64 and therefore leaves Rhema to its proof.

65.     Admitted.

66.     GOL admits that coliforms can be used as an indicator for hygiene, but denies
Rhema's characterization of coliform as a "safety indicator."  GOL further states that the term
"surrogate," as used in Paragraph 66, is undefined and vague, and does not permit GOL to
provide any additional response.  To the extent a response is required, GOL denies that coliform
and salmonella have the same animal pathways of potential transmission and GOL denies the
remaining allegations of Paragraph 66.

67.     GOL lacks knowledge or information sufficient to form a belief as to the truth of
the allegations in Paragraph 67 and therefore leaves Rhema to its proof.

68.     GOL states that the allegations of Paragraph 68 purport to assert a legal
conclusion and therefore require no response.  To the extent a response is required, GOL admits
that coliforms may be used as an indicator of certain aspects of hygiene in certain food and
dietary supplements, but denies the allegations of Paragraph 68 to the extent they suggest that the

mere presence of coliform indicates a problem with hygienic manufacturing practices.  GOL further denies that the presence of bacteria implies the presence of pathogens, such as salmonella, and denies any remaining allegations in Paragraph 68.

69.    Denied.

70.    Denied.

71.    GOL admits that Baobab had informed both GOL and Rhema of the option of employing a dry steam processing step to lower total plate count levels, but denies the remaining allegations of Paragraph 71.

72.    GOL denies the allegations of Paragraph 72 and states that Rhema undertook the contractual obligation to provide GOL with Raw Meal that was pure and free from contamination regardless of what testing was employed.

73.    Denied.

74.    Denied.

75.    Denied.

76.    GOL admits that GOL and Rhema agreed to include raw Moringa Powder sourced from Baobab as an ingredient in Raw Meal, but denies the remaining allegations of Paragraph 76, and specifically denies the allegation that "raw Moringa Powder carried a high risk of having contamination."

77.    Denied.

78.    GOL denies the allegations of Paragraph 78 to the extent they purport to assert that "Moringa Powder carried a high risk of the sort of bacterial contamination that posed a danger to human health and safety" and denies any allegation that GOL knew and/or withheld

material information about Moringa Powder from Rhema, or that Rhema lacked knowledge about any risks associated with the product it agreed to manufacture.

79.     GOL denies the allegations of Paragraph 79 to the extent they purport to assert that "the approved testing parameters were not reasonably sufficient to detect and/or prevent the sort of contamination that would be harmful to human health and safety" and denies any allegation that it knew and/or withheld material information about testing parameters from Rhema, or that Rhema lacked knowledge about testing parameters concerning the manufacturing that it undertook to provide.  GOL further states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Rhema's "knowledge" in Paragraph 79 and therefore leaves Rhema to its proof.

80.     The allegations of Paragraph 80 purport to construe a document that speaks for itself and to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 80.

81.     The allegations of Paragraph 81 purport to construe a document that speaks for itself and to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 81.

82.     The allegations of Paragraph 82 purport to construe a document that speaks for itself and to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 82.

83.     The allegations of Paragraph 83 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 83 and further states that the Court has held that there was, in fact, a warranty of

merchantability implied in the parties' agreements and that Rhema breached that implied warranty.

84.     The allegations of Paragraph 84 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 84.

85.     Denied.

86.     GOL admits that, to the best of its knowledge and belief, Baobab sold and delivered Rhema lots of Moringa Powder and certain of those lots were contaminated with Salmonella, but lacks knowledge or information sufficient to form a belief as to the precise dates on which Baobab sold and delivered Moringa Powder, and therefore leaves Rhema to its proof.

87.     GOL states that the allegations of Paragraph 87 purport to characterize documents that speak for themselves and therefore require no response.  To the extent a response is required, GOL states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 and therefore leaves Rhema to its proof.

88.     GOL admits that Moringa Powder from Baobab was identified to be the source of the Salmonella contamination in the Raw Meal that Rhema manufactured and supplied to GOL, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 88 and therefore leaves Rhema to its proof.

89.     GOL states that it is undisputed that the Raw Meal manufactured and supplied by Rhema to GOL, incorporating the Moringa Powder from Baobab, was contaminated with Salmonella, but lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 and therefore leaves Rhema to its proof.

90.     GOL states that it is undisputed that the Raw Meal manufactured and supplied by Rhema to GOL, incorporating the Moringa Powder from Baobab, was contaminated with Salmonella, but lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 and therefore leaves Rhema to its proof.

91.     GOL admits that the Raw Meal Rhema manufactured and supplied to GOL was contaminated with Salmonella, which the Court has held was a material breach of the parties' agreements, and that the source of the Salmonella contamination in the Raw Meal was Moringa Powder.  However, GOL states that it lacks knowledge or information sufficient to form a belief as to truth of any allegations as to when the Moringa Powder was first contaminated prior to its being used in the Raw Meal and therefore leaves Rhema to its proof.

92.     The allegations in Paragraph 92 seek an admission regarding an inadmissible subsequent remedial measure and therefore require no response. To the extent a response is required, GOL admits that it reformulated the specifications in light of the contaminated product that Rhema had supplied.

93.     GOL admits that Rhema supplied a replacement product but denies the remaining allegations of Paragraph 93.

94.     GOL lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 and therefore leaves Rhema to its proof.

95.     GOL admits that Rhema supplied certain replacement Raw Meal product to GOL after February 2016, but denies that Rhema is still doing so and denies the remaining allegations of Paragraph 95.

96.     The allegations of Paragraph 96 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of

Paragraph 96 and further states that the Court has already held that Rhema did not meet its obligations under the parties' agreements.

97.     The allegations of Paragraph 97 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 97 and further states that the Raw Meal products Rhema manufactured and supplied to GOL did not comply with their Finished Goods Specification and Packaging Specifications because, as the Court has held, the products were contaminated with Salmonella.

98.     The allegations of Paragraph 98 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 98 and further states that the Raw Meal products Rhema manufactured and supplied did not comply with the Quality Agreement because, as the Court has held, the products were contaminated with Salmonella.

99.     GOL states that the allegations of Paragraph 99 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 99 and further states that Rhema's manufacture and supply of Raw Meal products contaminated with Salmonella did not comply with 21 CFR Part 111.

100.    GOL states that the allegations of Paragraph 100 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the Manufacturing Agreement between Rhema and GOL includes the language quoted in Paragraph 100.

101.    GOL states that the allegations of Paragraph 101 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is

required, GOL admits that the Manufacturing Agreement between Rhema and GOL includes the language quoted in Paragraph 101.

102.    GOL states that the allegations of Paragraph 102 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the Manufacturing Agreement between Rhema and GOL includes the language quoted in Paragraph 102.

103.    GOL states that the allegations of Paragraph 103 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the Manufacturing Agreement between Rhema and GOL includes the language quoted in Paragraph 103.

104.    GOL states that the allegations of Paragraph 104 purport to selectively quote from a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that the Manufacturing Agreement between Rhema and GOL includes the language quoted in Paragraph 104.

105.    GOL states that the allegations of Paragraph 105 purport to characterize documents that speak for themselves and therefore require no response.  To the extent a response is required, GOL admits that it did not make payment of the amounts referenced in Paragraph 105 within 30 days of the invoice, but denies it has any obligation to make payment to Rhema given the Court's ruling that Rhema materially breached the parties' agreements and the other affirmative defenses stated below.

106.    GOL states that the allegations of Paragraph 106 purport to characterize a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL denies that any amount is "currently owing under the invoice" and that GOL has

any obligation to make payment to Rhema given the Court's ruling that Rhema materially breached the parties' agreements and the other affirmative defenses stated below.

107.    GOL admits it did not make payment of the amounts referenced in Paragraph 107 within 30 days of the invoice, but denies that GOL has any obligation to make payment to Rhema given the Court's ruling that Rhema materially breached the parties' agreements and the other affirmative defenses stated below.

108.    GOL states that the allegations of Paragraph 108 purport to characterize a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that it did not make payment within 30 days of the invoice referenced in Paragraph 108, but denies that any amount is "currently owing under the invoice" and that GOL has any obligation to make payment to Rhema given the Court's ruling that Rhema materially breached the parties' agreements and the other affirmative defenses stated below.

109.     GOL denies the allegations of Paragraph 109 given the Court's ruling that Rhema materially breached the parties' agreements and the other affirmative defenses stated below.

110.    GOL states that the allegations of Paragraph 110 purport to characterize a document that speaks for itself and therefore require no response.  To the extent a response is required, GOL admits that it did not make purchases of the amount reflected in Paragraph 110, but denies that GOL had any obligation to do so given the Court's ruling that Rhema's materially breached the parties' agreements and the other affirmative defenses stated below.

111.    Denied.

112.    GOL states that the allegations of Paragraph 112 purport to characterize a document that speaks for itself and to assert a legal conclusion, and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 112 and

that GOL has any obligation to make payment to Rhema given the Court's ruling that Rhema materially breached the parties' agreements and the other affirmative defenses stated below.

113.    GOL states that the allegations of Paragraph 113  purport to characterize a document that speaks for itself and to assert a legal conclusion, and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 113 and that GOL has any obligation to make payment to Rhema given the Court's ruling that Rhema materially breached the parties' agreements and the other affirmative defenses stated below.

114.    GOL states that the allegations of Paragraph 114 purport to characterize a document that speaks for itself and to assert a legal conclusion, and therefore require no response.  GOL further states that it lacks knowledge of information sufficient to form a belief as to the truth of the allegations of Paragraph 114 and therefore leaves Rhema to its proof.

115.    GOL states that the allegations of Paragraph 115 purport to characterize documents that speak for themselves and to assert a legal conclusion, and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 115 and that GOL has any obligation to make payment to Rhema given the Court's ruling that Rhema materially breached the parties' agreements and the other affirmative defenses stated below.

## FIRST CAUSE OF ACTION
### Breach of Contract

116.    GOL incorporates and repeats its responses to Paragraphs 1-115 of Rhema's Counterclaim as if fully set forth herein.

117.    GOL states that the allegations of Paragraph 117 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 117 and further states that Rhema materially breached the parties' agreements.

118.     GOL states that the allegations of Paragraph 118 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 118 and further states that Rhema materially breached the parties' agreements.

119.     GOL lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119 and therefore leaves Rhema to its proof.

120.     GOL states that the allegations of Paragraph 120 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 120 and further states that Rhema materially breached the parties' agreements.

121.     GOL states that the allegations of Paragraph 121 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 121 and further states that Rhema materially breached the parties' agreements, which, as the Court has held, caused <u>GOL</u> damages.

**SECOND CAUSE OF ACTION**
**Breach of Duty of Good Faith and Fair Dealing**

122.     GOL incorporates and repeats its responses to Paragraphs 1-121 of Rhema's Counterclaim as if fully set forth herein.

123.     The allegations of Paragraph 123 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies any suggestion that it breached any duty to Rhema.

124.     The allegations of Paragraph 124 purport to construe a document that speaks for itself and to assert a legal conclusion, and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 124 and that GOL has any

obligation to make payment to Rhema given the Court's ruling that Rhema materially breached the parties' agreements and the other affirmative defenses stated below.

125.    The allegations of Paragraph 125 purport to construe a document that speaks for itself and to assert a legal conclusion, and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 125 and that GOL has any obligation to make payment to Rhema given the Court's ruling that Rhema materially breached the parties' agreements and the other affirmative defenses stated below.

126.    The allegations of Paragraph 126 purport to assert a legal conclusion and therefore require no response.  To the extent a response is required, GOL denies the allegations of Paragraph 126 and that GOL has any obligation to make payment to Rhema given the Court's ruling that Rhema materially breached the parties' agreements and the other affirmative defenses stated below.

127.    GOL denies the allegations of Paragraph 127 to the extent they purport to claim that the total plate count levels in Moringa Powder were "high" at any time or all times in 2015 or that every lot of Moringa Powder supplied by Baobab to Rhema contained high total plate counts.  GOL denies any remaining allegations of Paragraph 127.

128.    GOL denies the allegations of Paragraph 128 to the extent they purport to assert that "Baobab recommended irradiating the raw Moringa Powder" and denies any remaining allegations in Paragraph 128.

129.    GOL denies the allegations of Paragraph 129 to the extent they purport to assert that "the reason why Baobab recommended irradiating the raw Moringa Powder was to kill microorganisms" and denies any remaining allegations in Paragraph 129.

130.    GOL denies the allegations of Paragraph 130 to the extent they purport to assert that the "testing parameters that [GOL] approved . . . were not reasonably sufficient to detect and/or prevent salmonella" and denies any remaining allegations in Paragraph 130.

131.    Denied.

132.    The allegations of Paragraph 132 are not assertions of fact but are phrased hypothetically and therefore require no response.  To the extent a response is required, GOL denies the allegations of paragraph 132.

133.    The allegations of Paragraph 133 merely purport to characterize Rhema's claims and therefore require no response.  To the extent a response is required, GOL denies that Rhema has a valid claim against GOL for breach of implied duty of good faith and fair dealing.

134.    Denied.

## PRAYER FOR RELIEF ON COUNTERCLAIM

GOL denies that Rhema is entitled to the relief Rhema has requested against GOL or any other relief against GOL.

## ADDITIONAL DEFENSES

### First Defense

Rhema's claims are barred because this court has held that Rhema has materially breached the Manufacturing Agreement and the Quality Agreement with GOL, which breach excuses any performance obligations on the part of GOL.

### Second Defense

Rhema's claims are barred in whole or in part by the provisions of the agreements referred to in the Complaint.

### Third Defense

Rhema's claims against GOL are barred to the extent Rhema's alleged injuries were caused by the fault of third parties.

### Fourth Defense

Rhema's claims are barred in whole or in part by the doctrines of waiver, ratification, and/or estoppel, including promissory estoppel.

### Fifth Defense

Rhema's claims are barred in whole or in part to the extent Rhema has failed to mitigate any damages it has allegedly suffered.

### Sixth Defense

Rhema's claims are barred in whole or in part because this court has held that Rhema has breach its implied warranty of merchantability, which breach excuses GOL from any obligation to make payment to Rhema.

### Seventh Defense

GOL is entitled to an offset for its damages based on Rhema's breach of its contractual obligations under the parties' agreements, which caused GOL to incur substantial damages.

### Eighth Defense

GOL is entitled to an offset for its damages based on Rhema's breach of its implied warranty of merchantability under the parties' agreements, which caused GOL to incur substantial damages.

### Ninth Defense

Rhema's claims are barred in whole or part because it manufactured and supplied non-conforming and adulterated goods, excusing GOL from any obligation to make payment to Rhema.

### Tenth Defense

Rhema's claims are barred in whole or part because of its failure to meet a condition precedent through its manufacture and supply of Salmonella-contaminated Raw Meal to GOL in breach of its contractual obligations and of its implied warranty of merchantability, excusing GOL from any obligation to make payment to Rhema.

### Eleventh Defense

GOL hereby gives notice that it intends to rely upon such and further defenses as may become available or apparent during further proceedings in this case and hereby reserves its right to amend its Answer and assert such defenses.

Dated:  June 26, 2018                    Respectfully submitted,

                                          MANNING CURTIS BRADSHAW
                                          & BEDNAR PLLC


                                          /s/ Christopher M. Glauser
                                          Alan C. Bradshaw
                                          Christopher M. Glauser

                                          Jeffrey A. Simes (*pro hac vice*)
                                          Joanne M. Gray (*pro hac vice*)
                                          Michael K. Murray (*pro hac vice*)
                                          Jenna C. Newmark (*pro hac vice*)
                                          **GOODWIN PROCTER LLP**
                                          The New York Times Building
                                          620 Eighth Avenue
                                          New York, NY  10018
                                          Phone: (212) 813-8800
                                          Fax: (212) 355-3333
                                          JSimes@goodwinlaw.com
                                          JGray@goodwinlaw.com
                                          MMurray@goodwinlaw.com
                                          JNewmark@goodwinlaw.com

                                          Amanda H. Russo (*pro hac vice*)
                                          **GOODWIN PROCTER LLP**
                                          901 New York Avenue N.W.
                                          Washington, DC  20001
                                          Phone: (202) 346-4000
                                          Fax: (202) 346-4444
                                          ARusso@goodwinlaw.com

                                          *Attorneys for Plaintiff/Counterclaim Defendant*
                                          *Garden of Life, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **GARDEN OF LIFE, LLC'S ANSWER AND DEFENSES TO RHEMA HEALTH PRODUCT INC.'S THIRD AMENDED ANSWER AND COUNTERCLAIM** to be served in the method indicated below to the below-named parties this 26th day of June, 2018.

| | |
|---|---|
| \_\_\_HAND DELIVERY<br>\_\_\_U.S. MAIL<br>\_\_\_FAX TRANSMISSION<br>\_\_\_E-MAIL TRANSMISSION<br> x  CM/ECF | Heather L. Thuet<br>Bryson R. Brown<br>CHRISTENSEN & JENSEN, P.C.<br>257 East 200 South, Suite 1100<br>Salt Lake City, UT 84111<br>Heather.Thuet@chrisjen.com<br>Bryson.Brown@chrisjen.com<br><br>*Attorneys for Defendant/Counterclaim Plaintiff Rhema Health Products, Inc.*<br><br>Ryan Atkinson<br>STRONG & HANNI<br>102 South 200 East, Suite 800<br>Salt Lake City, UT 84111<br>ratkinson@strongandhanni.com<br><br>*Attorney for Third-Party Defendant Tri-Iso Tryline, LLC  dba Baobab Foods* |

/s/ Christopher M. Glauser